**ANDERSON v. ANDERSON et al.**

No. 6907—Opinion Filed May 16, 1916.

On Rehearing, May 29, 1916.

2nd Petition for Rehearing Denied Nov. 20, 1917.

(165 Pac. 144.)

(Syllabus.)

1. **Guardian and Ward — Negligence—Surcharging Account.**

On a hearing of exceptions to a guardian's final account with each of his two wards,

the facts bearing on the first exception were: That the wards were equal owners of a fund of $2,500 in the hands of the guardian which he had loaned to a live stock company. The order authorizing him to do so, among other things, as a condition precedent to his right to make the loan, required the guardian to take back from the borrower a note and mortgage on certain live stock to secure the loan and also a policy of insurance on the stock, containing a clause making the same payable to the guardian as his interest may appear, which he failed to do, and, on account of such failure, the loan was lost. Held, that the guardian was negligent, and his accounts were properly surchargeable with the amount of the loan; one-half thereof to each account.

2. **Same.**

A guardian is liable to his ward, on a final settlement, not only for such money and estate as actually came into his hands, but also for such additional money or property lost by his negligence or failure of duty, as would have been received by him, had he exercised reasonable diligence and ordinary prudence in caring for his ward's estate.

3. **Executors and Administrators — Guardian and Ward—Final Account—Liability for Negligence — Statute of Nonclaim.**

On a hearing of exceptions to a guardian's final account with each of his two wards, the facts bearing on the second exception were: That S., as guardian of C., pursuant to an order of the probate court of C. county, made, executed, and delivered to M. an oil and gas lease, which was made and duly approved under the supposition that C. was the sole owner of the demised premises, and the cash consideration paid S. was charged to his account as guardian of C. Thereafter, in the probate court of C. county, in the distribution of the estate of which the demised premises was a part, it was determined that L. and N., minors, were entitled to share equally with C. in the estate. Thereupon, A., as guardian of L. and N., pursuant to an order of the probate court of T. county, joined with S. as guardian of C., in the execution of a new lease of the demised premises to M., without exacting from S. one-half the consideration received for the lease, and which S. thereafter, for more than two years, promised but refused to turn over to A., as guardian of L. and N. on demand. Thereafter, S. died, whereupon his successor in office, as guardian of C., was appointed, and M., his wife, appointed his executrix, who thereupon published notice to creditors to file their claims, which A., as guardian, failed to do for half the consideration due from S. to his wards. Further, evidence examined, and held that, owing to the mutations of business, one-half of said con-

sideration became so intermingled with the property of S. and his ward as to lose its identity and reduce the right thereto as against the estate of S. to a mere claim, which was barred by statute of nonclaim of four months (Comp. Laws 1909, §§ 5274, 5275), and was lost through the negligence of A., as guardian of L. and N., and being so lost, was properly surchargeable one-half to his final account with each of said wards.

Error from District Court, Tulsa County; L. M. Poe, Judge.

Exceptions by Lucy Anderson, nee Brown, and others, to the final separate accounts of William Anderson, guardian of Lucy Brown and Nellie Brown, minors. Exceptions sustained, and the guardian surcharged with certain amounts, and he brings error. Affirmed.

Burke & Harrison and W. T. Hutchings, for plaintiff in error.

N. J. Gubser and McDougal, Lytle & Allen, for defendants in error.

TURNER, J. On June 24, 1912, in the county court of Tulsa county, William Anderson, plaintiff in error, tendered his resignation as the guardian of Lucy Brown and Nellie Brown, minors. On August 27, 1912, he filed separate final accounts, as the guardian of each ward, which were, on January 13, 1913, excepted to on the same grounds by his successors in office appointed and qualified on September 9, 1912; and the same, coming on to be heard, were consolidated, and on April 17, 1913, sustained. In the meantime, Lucy had married Walter Anderson and died, and the cause was revived in the name of Lee Clinton, her administrator. In sustaining the exceptions, the court surcharged each account with $1,250, or one-half of a fund of $2,500 belonging to both wards, which the guardian had loaned to the Limestone Live Stock Company, and which, the court held, the guardian had lost by negligently taking inadequate security. The court further surcharged each account with $4,043.75, which, the court held, was due and unpaid each ward, and which the guardian had negligently permitted to be lost to the estate by his failure to collect. He excepted to the action of the court in so surcharging his accounts, but, on appeal to the district court, the judgment was affirmed, and he brings the case here. He says the court erred in charging him with the loss of the $2,500 loan. The order authorizing the loan was made May 2, 1910, and, after reciting the necessary facts upon which to base it, reads:

"The court, being fully advised in the premises, is pleased to authorize and order said William Anderson, guardian of Nellie and Lucy Brown, minors, to enter into a contract for the purpose of making a loan to said Limestone Live Stock Company, upon the following conditions, to wit: Provided that said guardian shall take from said company a note signed by said 12 members of said company or any ten of said company, for the sum of $2,500 to run for a period of one year bearing 8 per cent. interest per annum to be further secured by a mortgage properly describing the live stock and animals hereinbefore alluded to, made payable to said guardian, for the use and benefit of said wards.

"It is further ordered and directed by the court that the owners of said animals shall cause said animals to be insured in some reliable insurance company in such sum as may be advisable to be carried by said insurance company, said insurance policy to contain a mortgage clause payable to said guardian as his interest may appear as additional security for payment of said note."

Construing which, the court held, in the light of the admitted fact that the stock was not insured as required thereby and hence the loan was lost, that the guardian was negligent in making it and should be charged with the full amount thereof. The court was right. By the order the guardian was authorized to make the loan only on certain conditions precedent to his right to make it pertaining to security therefor. One of those conditions required the guardian to take a mortgage on certain stock and that the owners of the stock cause it to be insured; the policy to contain a clause making the same payable to the guardian as his interest may appear "as additional security for the payment of said note," i. e., the note evidencing the loan and secured by the mortgage. Which means that the policy of insurance was required to be issued as ordered before the guardian had the right to part with the wards' money. It will not do to say that because, in prescribing the terms of the loan, the order reads, "it is further authorized and directed by the court" that this policy issue "as additional security," such was not a condition precedent to the right to make it, and hence, as no company would insure the stock, the guardian had a right to disregard this requirement and to make the loan without complying with it. This for the reason that, in so further ordering and directing, the court was dealing with conditions precedent to the right to make the loan, and as one of those conditions prescribed a policy of insurance as collateral

to the loan; intending thereby that such collateral be executed and delivered before the guardian parted with the money of the ward. If it were true that no company would issue the policy required by the order, it was the duty of the guardian to so report to the court and secure a modification of the order or refuse to make the loan. Having made the loan in violation of the order, he did so at his peril and lost the loan as a result of his negligence, and therefore must respond to the action of the court in surcharging his accounts for the amount thereof. Guardianship of Cardwell, 55 Cal. 137; In re Estate of Mary Schandoney, 133 Cal. 387, 65 Pac. 877; In re Carver, 118 Cal. 73, 50 Pac. 22.

The next question is: Was the court right in surcharging each of his accounts with the further sum of $4,043.75 for his failure to collect twice that amount, or one-half the amount received by Dr. Soliss, as guardian of Lena Coser, as a bonus on her lease to the Mohawk Oil & Gas Company? There is no dispute as to the facts bearing on this exception. They are that, prior to 1907, Nuttetsa Coser died intestate in what is now Creek county, leaving him surviving a daughter, Lena Coser, at the time supposed to be his only heir at law, leaving also a tract of land in that county. Joseph Bruner qualified as administrator of his estate in the United States Court for the Indian Territory, Western District. In 1907, one Dr. Soliss, as guardian of Lena, pursuant to the order of said court, in which he also qualified, executed an oil and gas lease on the land to Mohawk Oil & Gas Company for a consideration of $16,175, which was duly approved by the Secretary of the Interior, also supposing Lena to be the only heir as stated, and, the presumption is, charged himself therewith as guardian of her estate. After that came on to be passed the order of final distribution of the estate of Nuttetsa, when the county court of Creek county found that Lucy Brown and Nellie Brown were grandchildren and also heirs at law of said Nuttetsa, and as such were entitled to one-half of the estate; and it was so ordered. On October 8, 1909, the county court of Tulsa county, on petition of plaintiff in error as guardian of Lucy and Nellie, ordered him to join with Soliss in a new lease to the Mohawk Oil & Gas Company, which he did, and the same was approved, without exacting from either Soliss or the company a consideration therefor, or so much as requesting that he be permitted to share in the bonus theretofore received by Soliss as stated. While

still the guardian of Lena, with this bonus of $16,175 in his hands as such, on April 12, 1912, Soliss died, having promised but failed to turn over to plaintiff in error, as guardian of Lucy and Nellie, one-half of said bonus on demand, pursuant to the order of the county court of Tulsa county dated September 6, 1910. Shortly thereafter, the county court of Creek county appointed Mary, his wife, executrix of his estate, and Joseph Bruner, his successor in office as guardian of Lena, and the executrix, after publishing notice to creditors, as required by law, proceeded to administer upon the estate; but at no time has plaintiff in error collected or attempted to collect from her one-half the bonus due his wards, as stated, or filed his claim therefor with her as executrix of the estate of her husband. In holding that the accounts of this guardian were surchargeable with the amount in question, the court, in effect, held that Lucy and Nellie were entitled to one-half of the bonus so collected by Soliss; that the guardian was not only negligent in failing to collect the same from Soliss at the time he joined in the lease, but that he was negligent in failing to collect that amount from Soliss for the two years and a half intervening between that time and the death of Soliss, and was also negligent in failing to present a claim therefor to his executrix, and that by reason of all of which the same was barred by the statute of nonclaim of four months (Comp. Laws 1909, §§ 5274, 5275).

Aside from holding that the claim was barred (of which we shall later speak), the court was right. The general rule is, as stated in Roush et al. v. Griffith et al., 65 W. Va. 752, 65 S. E. 168, that:

"A guardian is liable to his ward, on a final settlement, not only for such money and estate as actually came into his hands, but also for such additional money or property, lost by his negligence or failure of duty, as would have been received by him, had he exercised reasonable diligence and ordinary prudence in caring for his ward's estate."

Or as stated in State ex rel. v. Brown et al., 73 N. C. 81:

"A guardian is liable, not only for what he receives, but for all he ought to have received of his ward's estate; and, while infallible judgment is not expected of him in the management of his ward's estate, yet ordinary diligence and the highest degree of good faith is expected and required of him in the execution of his trust."

As the right of Lucy and Nellie to share alike in the bonus money is not questioned,

it would seem to require no citation of authority to support the proposition that when they, as owners of one-half of the demised premises, joined with their guardian as parties lessor in the lease to the oil company, they were entitled to one-half the bonus paid Soliss, and that the guardian was negligent when he failed to bring suit to recover the same from Soliss, upon his refusal to turn it over to the guardian on demand, and permitted the same, less perhaps his commission, to be administered by Soliss as guardian into the estate of Lena Coser.

In re Kennedy, 120 Cal. 458, 52 Pac. 820, was an appeal by the executor from an order of court, surcharging his final account with a sum certain. The facts were that the executor had sold, by leave of court, an interest of his decedent in real estate belonging in common to the decedent and certain trustees and allowed the trustees to appropriate the money in payment of certain trust obligations, pursuant to certain stipulations and an order of court, in a suit to settle the trust estate in which he was not a party. On this state of facts it was held that this account was properly surchargeable with the money he should have received from the sale.

Thus, it would seem, from its inception this was nothing more than a claim of one guardian against another, upon which this guardian might have recovered in a suit at law. But, assuming, as we are asked to do, that one-half of this bonus was a trust fund in the hands of Soliss for the benefit of Lucy and Nellie, and that this guardian had a right to come into a court of equity and have it so declared, we are of opinion that the negligence of this guardian, in failing to take the proper steps to reduce it to possession and the mutations of business whereby the fund became so intermingled with the property of Soliss and his ward as to destroy its identity, reduced it to a mere claim against the estate of Soliss which should have been presented by this guardian to the executrix of Soliss within the time prescribed by the statute. We say that, owing to the mutations of business, this fund lost its identity, and hence the right to one-half the bonus money was reduced to a mere claim against the estate of Soliss for the reason that the same has become absorbed in the property of Soliss and that of Lena Coser, as stated, and hence cannot be traced and identified as the property of Soliss in the hands of his executrix. When such is the case, and it is only shown generally, as

here, that the estate of Soliss was solvent, without any attempt to show of what it consisted or what of it passed into the hands of his executrix, or that such as passed was a part of the trust fund sought to be traced, much less that any part of that fund entered into it, we repeat the right to payment is reduced to a mere claim against the estate, subject to the bar of the statute.

In Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec. 141, the facts were that one Griffith was appointed guardian of Augusta Dean, a minor. Thereafter, the plaintiffs were also appointed her guardians. Before they were appointed, Griffith, as guardian, had come into possession of $2,500, derived from the lawful sale of certain real estate which he had previously, pursuant to the order of the probate court which appointed him, invested in the estate of his ward. He never thereafter invested said sum or any part of it for her benefit; nor did he keep the same separate and apart from his private funds, or any account thereof or of the income or expenses therefrom between himself and his ward, but mixed the same with his private funds and used it in his general business expenditures and investments, and never thereafter separated the same so it could be distinguished from his own private property. Later he died, without rendering any account as guardian, but left a last will and testament in which he attempted to dispose of all his individual property, regardless of any supposed interest his ward might have therein. Thereafter his executor took possession of all the money and other property of which testator died possessed and was engaged in administering upon the estate of testator, regardless of any claim of the minor. Among the assets which came into his hands was the sum of $200. The estate of Griffith was insolvent, and so were the sureties upon his official bond as guardian, and unable to respond from the trust fund so received and held by him. Whether any of his real and personal property was acquired before he came into possession of the trust fund did not appear. Neither did it appear whether any of it was purchased by him with the trust fund or any part of it; and when defendant, his executor, refused to account to the plaintiffs as guardians of Augusta Dean, suit was brought for the purpose of subjecting the entire assets in the hands of defendant to the trust in question, and to pay over the full amount of the trust fund in the hands of his exec-

utor to satisfy the claim of the guardians. No claim was ever presented to defendant by plaintiffs as provided by the statute then in force, which is similar to our statute of nonclaim, supra. Plaintiffs prevailed. Whether or not they should have done so turned on the question here involved. In reversing the case and holding that the demand was a mere claim against the estate and was barred by the statute of nonclaim, the court said:

"Where a trustee, in violation of his trust, invests the trust property or its proceeds in any other property, the cestui que trust may elect to hold the substituted property subject to the trust, or to hold the trustee personally liable to him for the breach of the trust. The former he can do, however, only when he can follow and identify the property, either in its original or substituted form, as we have already seen. If this cannot be done, the right of the cestui que trust to elect is gone, because its exercise has become impossible, and he is therefore forced to rely upon the personal liability of the trustee; and such seems to be the condition of the cestui que trust in the present case. When thus forced to rely upon the personal liability of the trustee, a cestui que trust occupies a position towards the estate of the trustee which is no better, but is identical with that of a simple contract creditor. He has no special lien upon the general estate of the trustee which is superior to that of any other creditor; for the specific property covered by the trust is gone, and nothing is left to the cestui que trust except a naked claim for damages generally, on account of the breach, to be obtained through an action at law, attended by all the incidents of a like action on behalf of one who is not the beneficiary of a trust. * * *

"Our conclusion is that the plaintiffs, upon the facts as disclosed by the record, had only a claim against the estate of Griffith, upon which they could have recovered had the same been presented to the defendant as required by the act concerning the settlement of the estates of deceased persons, but that they are not entitled to the relief which they obtained in the court below."

And on rehearing:

"The defendant cannot be charged and held to account as a trustee, except upon the averment that he has come into the possession of the trust fund or its substitute. If, at the time of his death, the defendant's testator was in the possession of the trust fund, or other property into which he may have converted it, and such fund, or other property had come into the possession of the defendant, he would have held it upon the same terms as his testator held it, and the relation of trustee to the ward of the plaintiffs would have been added to that of executor by virtue of his successorship. Such fund or other property would have constituted no part of the testator's assets, and the defendant would not have held it in his capacity as executor, but in his capacity as succeeding trustee to the plaintiffs' ward, and might have been compelled to account as such. But such is not the case. Neither the trust fund, nor any substitute for it, which can be identified as such, has come into the hands of the defendant. On the contrary, the trust estate is gone, or, which amounts to the same thing, its identity is entirely lost; for it is not shown to be in the hands of the defendant in its primary condition, or that it was converted by the defendant's testator into the property or any part of it now in the defendant's possession as executor. Hence the defendant does not stand in the relation of trustee to the ward of the plaintiffs, beyond the obligations imposed by his office as executor, and she has no remedy against him, except such as belongs to a general creditor of the estate. Trecothick v. Austin, 4 Mason, 29, Fed. Cas. No. 14164; Johnson v. Ames, 11 Pick. 181."

And in the syllabus it is said:

"A trust assumed by a testator will not be enforced against his executor when the identity of the trust fund is entirely lost, and it is neither shown to be in the hands of the executor in its primary condition, nor that it was converted by his testator into the property or any part of it in the executor's possession."

In Roach v. Caraffa, 85 Cal. 436, 25 Pac. 22, in the syllabus it is said:

"If a trust fund in the mutations of business has become so mingled with and absorbed into the property belonging to the trustee as to be no longer capable of being traced or identified the only remedy of the cestui que trust upon the death of the trustee is that of a creditor, and, if he fails to present his claim as required by probate law, he must fail in his action; but if the trust property can still be earmarked, traced, and identified, the cestui que trust may maintain an action against the administrator to enforce the trust, without presenting any claim against the estate of the trustee, since the cestui que trust in such case seeks his own property only, and not to enforce a claim against the estate and property of the decedent."

In Byrne v. McGrath, 130 Cal. 316, 62 Pac. 559, 80 Am. St. Rep. 127, in the syllabus it is said:

"Where a trust fund held by a deceased person is susceptible of identification, the trust may be enforced without the presentation of a claim against the estate; and it is only where the trust fund cannot be identified that the presentation of a claim against the estate, within the time limited by law, is essential."

We are therefore of opinion that the accounts of this guardian were properly surchargeable with one-half of this bonus of $16,175, that is, one-fourth thereof to the account of Lucy and a like amount to the account of Nellie; and that the judgment of the trial court should be affirmed, that is, if the court was right in holding that the bar of the statute of nonclaim fell at the expiration of four months from the date of the first publication by the executrix of Soliss of notice to creditors to file their claims. This sends us to the statute. Stripped to the point, Comp. Laws 1909 reads:

"Sec. 5274. Every executor or administrator must, immediately after his appointment, cause to be published in some newspaper in the county, * * * a notice to the creditors of the decedent, requiring all persons having claims against him to exhibit them * * * to the executor or administrator, at the place of his residence or business, to be specified in the notice. * * *

"Sec. 5275. The time expressed in the notice must be six months after its first publication, when the estate exceeds in value the sum of five thousand dollars, and four months when it does not."

These sections were sections 1309 and 1310 of the Statutes of 1893. The former was amended by act approved March 17, 1910 (Sess. Laws 1910, c. 65), and, as amended, was construed with section 1310, unrepealed by that act, in Soliss v. Gen. Elec. Co., 213 Fed. 204, 129 C. C. A. 548, and held to mean that:

"The time for the presentation of claims against estates of a value in excess of $5,000 remained six months from the date of the notice."

From which we learn that the time for so doing is four months where the estate does not exceed that value. As there is no evidence of its value or claim that the estate of Soliss exceeded that amount and hence the six months' period applied, the court did right in holding as he did, and this, too, although claimants are infants, as the statute in question contains no exemption in favor of such. Morgan et al. v. Hamlet et al., 113 U. S. 449, 5 Sup. Ct. 583, 28 L. Ed. 1043.

Some complaint is made of interest surcharged on certain items in these settlements; but, since counsel fail to make clear what alleged error of law they would have us decide, we decline to speculate.

Finding no merit in the remaining assignments of error, the judgment of the trial court is affirmed.

All the Justices concur.

## On Rehearing.

TURNER, J. It is urged that there is no evidence reasonably tending to prove that this fund was lost, and hence the court erred in holding that it was. While this does not appear in their assignments of error, counsel for plaintiff in error urge it as though it did, and in their briefs on rehearing again seek to go into that question. They contend that the modern rule is, not as stated in the opinion, but as stated in Lowe v. Jones, 192 Mass. 94, 78 N. E. 402, 6 L. R. A. (N. S.) 487, 116 Am. St. Rep. 225, 7 Ann. Cas. 551, that:

"It is now held that, if the proceeds of trust property can be traced into a particular fund, the trust may be established and enforced as a charge upon the fund."

And that (quoting, they say, from Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec. 141):

"So long as the fund is greater than the amount of the trust fund, it will, in the absence of any showing to the contrary, be presumed to be held in trust."

And, taking this as the rule, they seek to show us that the one-half of the lease money collected by Soliss, belonging to Lucy and Nellie Brown, can be traced into the assets of his estate or into the fund in the hands of Joseph Bruner, as guardian of Lena Coser, and hence, they say, said fund is not lost; and hence, not being lost, plaintiff in error, as guardian for Lucy and Nellie, cannot be surchargeable therewith. Assuming the correctness of the rule contended for, and still assuming that fund to be a trust fund and that the point is properly before us, we repeat, the fund has been lost in the mutations of business, and that, from the record, it is impossible to tell whether it passed into the hands of the executrix of Soliss and into the assets of his estate, or into the hands of the guardian of Lena Coser as a part of the assets of her estate, or whether it has become absorbed in the estate of both. It cannot be successfully maintained that it can be traced into the estate of Soliss for the reason the record discloses the only evidence on this point to be that, while his estate was solvent, there is no evidence of its value and no claim that it exceeded $5,000. And, besides, no claim that the fund in controversy passed into the assets thereof was made in the trial court. Neither can it be successfully maintained that this fund can be traced into the hands of the guardian of Lena Coser as a part of

her estate so as to make it a charge upon that fund. This for the reason the record discloses the only evidence upon that point to be that her estate at the death of Soliss was solvent with "several thousand dollars loaned out at interest," which, together with $4,500 cash on hand, was more than the amount of this fund. As the record fails to disclose, and there was no attempt to prove, that the fund in controversy was traceable into the assets of said estate, we adhere to the opinion that said fund cannot be made a chrge upon it.

It follows that the modern doctrine contended for, in effect, that the confusion of trust property wrongfully converted does not destroy the equity entirely, but that, when the funds are traced into the assets of the unfaithful trustee, or one who has knowledge of the character of the funds, they become a charge upon the entire assets with which they are mingled, has no application to the facts in this case.

It is further contended that, on the undisputed facts, plaintiff in error was not a "creditor" with a "claim arising upon a contract" against the estate of Soliss within the contemplation of Rev. Laws 1910, § 6338, which provides:

"If a claim arising upon a contract heretofore made be not presented within the time limited in the notice, it is barred forever. * * * *"

And section 6336, which provides:

"Every executor or administrator must, immediately after his appointment, give notice to the creditors of the decedent, requiring all persons having claims against said estate to present the same. * * * *"

And that the court erred in holding that he was and that the so-called claim was lost and barred because not presented within the four months required by said statute. Not so. When Soliss received the share of this lease money belonging to Lucy and Nellie, inasmuch as he, in equity and good conscience, had no right to retain it, a promise to pay it to plaintiff in error as guardian of Lucy and Nellie arose by implication sufficient to establish between them the relation of debtor and creditor; that is, Soliss was their debtor and they creditors of his estate, after his death, with a claim against it arising upon said implied contract. And, as this contract was sufficient to support an action in the nature of assumpsit for money had and received against him while living, the money thus due them constituted a claim arising upon contract against his estate

after his death. Allsman et. al. v. Oklahoma City, 21 Okla. 142, 95 Pac. 468, 16 L. R. A. (N. S.) 511, 17 Ann. Cas. 184, was such an action to recover the unearned portion of a license fee to sell intoxicating liquors which had been revoked on the erection of the state. It was urged that, as assumpsit at common law would not lie except upon a parol or simple contract, plaintiff was not entitled to recover, which we said was true; but, applying the modern rule which we declared to be that, whenever one had the money of another, which he in equity and good conscience, had no right to retain, the law would imply a promise to pay it over to the person rightfully entitled to it, we held that plaintiff was entitled to recover. In that case we cited Lawson's Ex. v. Lawson, 16 Grat. (Va.) 230, 80 Am. Dec. 702, which was the same kind of an action; the money sought to be recovered being the property of plaintiff's testator in the hands of his wife which he had left with her for safe-keeping only, a short time before his death. In a suit by his executor against her to recover it, the court said that, if it be conceded that upon her refusal to deliver the money to plaintiff on demand trover might be maintained as for a tort, it by no means followed assumpsit would not lie for the reason that the party aggrieved might waive the tort and sue in assumpsit, which would lie "whenever any one has the money of another which he has no right to retain, but which, ex aequo et bono, he should pay over to that other," and that "the law will imply a promise to pay the amount to the plaintiff" if necessary to support the action.

It follows that Lucy and Nellie were creditors of the Soliss estate with a claim against it, to the amount of said fund, arising upon contract which, not being presented within the time prescribed by law, was lost, owing to the negligence of plaintiff in error and the fall of the bar of the statute, and hence he was properly surchargeable with the amount thereof.

All the Justices concur.