[L. A. No. 27989.   In Bank.   Nov. 5, 1964.]

THOMAS HIGGINS, Plaintiff and Appellant, v. CITY OF SANTA MONICA et al., Defendants and Respondents.

Harold Judson, Michael P. Kelly, O'Melveny & Myers, Pierce Works, William W. Alsup and William D. Moore for Plaintiff and Appellant.

Robert G. Cockins, City Attorney, James W. Shumar and Herman F. Selvin for Defendants and Respondents.

McCOMB, J.—Plaintiff appeals from a judgment in favor of defendants in an action to obtain an adjudication as to the validity of Santa Monica Initiative Ordinance 703, insofar as such ordinance prohibits drilling or prospecting for oil, gas, and other hydrocarbon substances upon the tidelands and submerged lands granted in 1917 by the State of California to the City of Santa Monica.

The case was submitted upon stipulated facts and stipulated issues, after which the trial court rendered judgment upholding the validity and enforceability of the ordinance and the legality of any expenditure of municipal funds in enforcement thereof.

*Facts*: In 1917 the Legislature granted to Santa Monica all tidelands within its municipal limits, subject to trust uses in aid of commerce, navigation, and fishery and other uses consistent therewith. (Stats. 1917, ch. 78, p. 90; subsequently amended, Stats. 1949, ch. 616, p. 1114.) The grant did not reserve to the state the mineral rights in the lands.

In 1939, by an initiative measure pursuant to the Santa Monica City Charter, the electorate of the city adopted ordinance 703, which, in substance, declared the drilling or prospecting for oil, gas, or other hydrocarbon substances, and operations incidental thereto, within the municipal limits, to be a nuisance and unlawful. It imposed criminal sanctions by way of both fine and imprisonment and specified that any violation would constitute a separate offense for any day upon which the same occurred.

As of September 23, 1954, the City of Santa Monica entered into an agreement with General Petroleum Corporation (now Socony Mobil Oil Company, Inc.), whereby the latter was employed by the city to develop for oil, gas, and other hydrocarbon substances that part of the city lying seaward of the mean high tide line. The agreement, however, recognized the existence of, and was subordinated to, ordinance 703, which has operated to prevent its performance during its entire life to date.

In November 1954 and August 1960, propositions which would have permitted drilling on the tidelands at least one mile from the shore line were submitted to the electorate of Santa Monica. Each of these proposed measures was defeated.

Prior to November 1963, Socony Mobil and Signal Oil & Gas Company, its subcontractor under the 1954 contract mentioned above, submitted to the City of Santa Monica an exploratory drilling program, which was referred by the city to its consultant, E. R. Stanley. Mr. Stanley approved the same as to suitability and conformity to good oil field practices by responsible drilling and producing companies and recommended its approval by the city. The City Attorney of Santa Monica concurred in such approval and recommendation.

During 1964 the City of Los Angeles established two off-shore oil drilling districts abutting on the south the Santa Monica tidelands, wherein drilling and prospecting for oil, gas, and other hydrocarbon substances may be initiated and carried on at the discretion of the appropriate authorities of the City of Los Angeles.

■ QUESTIONS: First. *Is ordinance 703 of the City of Santa Monica, so far as it prohibits, with criminal sanctions, the drilling or prospecting for oil, gas, and other hydrocarbon substances on the Santa Monica tidelands, unconstitutional?*

*No.* The ordinance, so far as it is applicable to the Santa Monica tidelands, amounts to a determination that the city does not desire to subject the public to the inconvenience, noisome effects, and potential dangers that may accompany and follow the exploration for, and production of, oil.

Such determination was made by the city council, the body lawfully charged in the first instance with setting the city's public policy. This determination was confirmed by its approval upon a submission to the people and by the rejection of two later attempts to repeal it, also submitted to the people.

The grant from the state did not impose a mandatory duty upon the city to develop the tidelands for oil. It simply transferred the lands to the city subject to certain trusts and conferred upon the city the right to lease the lands for uses consistent· with the purposes expressed therein, explicitly phrasing that power in the words "the city . . . *may* lease." (Italics added.)

The uses and purposes to which the grant made the lands subject are, in general summary, navigation, commerce, and fishing. (*Long Beach* v. *Marshall,* 11 Cal.2d 609, 614 [82 P.2d 362].)

The original grant from the state specifically authorized the establishment, improvement, and conduct of a harbor; the establishment and construction of bulkheads and break-waters for the protection of lands within its boundaries; and the construction, maintenance, and operation of wharves, docks, and similar structures and appliances necessary or convenient for the promotion or accommodation of commerce and navigation and the protection of the lands within the city; and it reserved to the people of the state the absolute right to fish in the waters of the harbor. The 1949 amendment provides that the lands may be used for recreational purposes to the extent not inconsistent with the other purposes.

Nothing in these uses and purposes requires or envisages the development of oil resources. Indeed, they may be deter-

rent of any such activity, for the structures employed in drilling and pumping for oil, when in place in the ocean, could be serious obstructions to, or interferences with, navigation, ocean-borne commerce, and fishing, as well as with recreational use of the beach, intensified in the two latter respects by the beach and water polluting capabilities of petroleum brought to and near the surface.

But for the ordinance, the city could, if it so desired, lease the lands for oil development purposes, so long as the purposes of the grant to it were not thereby impaired or impeded.[1] (Cf. *City of Long Beach* v. *Marshall, supra,* 11 Cal.2d at p. 620 [9].) The permissive power to lease in the grant is broad enough to embrace such an undertaking. The power, however, is plainly a discretionary one.

The city has exercised its discretion by determining as a matter of public policy not to develop whatever oil there may be under the tidelands. This it has done by enactment of ordinance 703.

No fraud or abuse of discretion being claimed or shown, the city's exercise of discretion is not subject to challenge or compelled revision; such exercise "is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." (Rest. 2d Trusts (1959) § 187; see *People* v. *California Fish Co.,* 166 Cal. 576, 597 [138 P. 79]; *Estate of Cousins,* 111 Cal. 441, 449 [44 P. 182]; *Estate of Schandoney,* 133 Cal. 387, 393 [65 P. 877].)

The usual rule is that a trustee is bound to use diligence to make a trust productive. What that means, generally, is that "it is the duty of the trustee to invest trust funds so that they will be productive of income." (2 Scott on Trusts (2d ed. 1956) § 181, p. 1348.)

Obviously, that is a rule designed for trusts intended to be productive of income or other gain. The reason for it is that the trustee's overriding duty is to effectuate the trust purpose. However, the reason for the rule requiring productivity ceases, and, accordingly, so does the rule (Civ. Code, § 3510), in the case of a trust not designed for an income or monetary purpose but for other purposes, such as holding and preservation of property for use by others.

Even in the case of money, where it is ordinarily a trustee's duty to make it productive by investing it, he is not under such a duty if the purpose of the trust was not investment

---

[1]Subject, since 1959, to approval of the State Lands Commission. (Pub. Resources Code, § 7060.)

or productivity but only safeguarding. (*Allin* v. *Williams,* 97 Cal. 403, 409 [32 P. 441] ; 2 Scott on Trusts (2d ed. 1956) § 181, p. 1349; Bogert, Trusts and Trustees (2d ed. 1960) § 611.)

This is a true *a fortiori* in the instant case, where the purpose of the trust is not to make money but to hold the lands and overlying tidal waters in order to preserve and keep them available for the public's rightful use of them for commerce, navigation, fishing, and recreation, and where making the trust property productive by developing it for oil could very well defeat or impair the trust purposes.

Protection of a great highway of commercial intercourse and preservation of the public's opportunities of rest and relaxation from the cares of mundane existence are as commendable and proper governmental objectives as the making of money. Choice of the one in preference to the other cannot reasonably be said to be an abuse of the discretion vested in the city.

Ordinance 703 may be repealed or amended by the legislative body having jurisdiction so to do, i.e., by the people legislating directly, if it is determined to be wise or proper to open the tidelands to exploration for oil.

The fact that accomplishment of amendment or repeal through the initiative process may be cumbersome or difficult is not the product of the alleged restriction of future discretion; it is merely a characteristic of the kind of legislative system the Constitution of this state has ordained. The significant fact is that the full legislative power of the city remains entirely unimpaired, so that it is available to permit oil development of the tidelands. The ordinance, therefore, no more limits future discretion than does any other prohibitory ordinance admittedly within a city's power to enact.

No valid objection to the constitutionality of a statute under the due process clause properly arises if it is reasonably related to promoting the public health, safety, comfort, and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. (*Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 146 [5] [346 P.2d 737] ; *Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446, 456 [55 P.2d 177].)

Such a statute is presumed to be constitutional; and it must be deemed to have been enacted on the basis of any state of facts supporting it that reasonably can be conceived. (*Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479], petition for cert. dismissed, 273

U.S. 781 [47 S.Ct. 460, 71 L.Ed. 889]; *People* v. *Western Fruit Growers, Inc.,* 22 Cal.2d 494, 507 [11] [140 P.2d 13].)

▉ Accordingly, the burden is on the party challenging a statute to show that the legislative choice "is palpably excluded from any consideration whatever" by the legislative body (*In re Madera Irr. Dist.,* 92 Cal. 296, 308 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755]); that it is " 'palpably arbitrary and beyond rational doubt erroneous' " (*In re De La O,* 59 Cal.2d 128, 153 [28 Cal.Rptr. 489, 378 P.2d 793]); that, in short, there is no rational basis whatever for the statute. No such showing has been made here.[2]

▉ Under article XI, section 11, of the Constitution, a police power regulation is invalid if it conflicts with a general law. Plaintiff points out that by general law (Civ. Code, § 718, and Pub. Resources Code, § 7057), cities are authorized, in their discretion, to undertake exploration of tidelands granted to them by the state, and argues that since the ordinance in question prohibits Santa Monica from exercising such discretion, it is, to that extent, in conflict with general law and, consequently, an invalid enactment.

As pointed out above, however, Santa Monica has not abdicated the power, in its discretion, to undertake exploration of the tidelands granted to it by the state. Instead, through its electorate and in the valid exercise of its discre-

[2]The stipulation of facts entered into herein provides:

" . . . . . . . . . .

"6. For many years the city's principal economic asset has been and is the business produced by the large numbers of tourists and transient visitors who come to the city to be near and make use of the beaches along its westerly boundary.

" . . . . . . . . . .

"10. Substantial segments of the general public believe: (1) that the presence of off-shore oil-drilling operations in the vicinity of ocean beaches substantially increases the amount of oily and tarry materials deposited in and on the adjoining waters, which materials will in part remain on the water in the form of an oil slick and will in other part be deposited on the beaches; (2) that such operations produce offensive odors and noises perceptible to the senses ashore and on and in the vicinity of the beaches; (3) that such operations tend to increase the danger of pollution of the water and beaches from such deposition and from the risk of pipe and oil-line breakages or other casualties that may release quantities of crude oil; (4) that such operations tend to increase the danger of explosion and fire from the presence and transportation and other moving or shifting of large quantities of crude oil and natural gas; and (5) that such operations, by reason of the equipment and structures used therein tend to impair or destroy the natural beauty of the beaches and the seaview or seascape observable from the beaches and other vantage points in the adjoining city."

tion, it has determined on three separate occasions not to undertake such exploration.

■ Second. *Has the state preempted the field of determining whether or not a city should develop, for oil or gas, tidelands granted to it by the state?*

*No.*

Plaintiff argues that by the enactment in 1959 of sections 7058.5, 7059, and 7060 of the Public Resources Code the Legislature preempted and wholly occupied the field with reference to the regulation of the use of state-granted tidelands for the production of oil and gas, with the result that, in any event not later than 1959, ordinance 703 ceased to have any operative effect or validity.[3]

Although the statutes show a preemption by the state with respect to the mode and manner in which a city may execute oil leases to tide and submerged lands granted to it by the state, there has been no preemption of the field of determining whether or not such lands should be developed for oil or gas. That question, as the permissive language of sections 7057 and 7058 of the Public Resources Code and section 718 of the Civil Code clearly shows, is one that has been left to the discretion of the city involved.

Furthermore, section 6305 of the Public Resources Code confers ''upon the counties and cities to which such [tide] lands have been granted'' all the leasing powers granted to the State Lands Commission. All the state's oil-leasing powers are vested in, and exercisable by, that commission. (Pub. Resources Code, §§ 6102, 6216, 6301, 6501.1.) It follows that all such powers in respect to the tidelands granted to Santa Monica are now vested in that city.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Schauer, J.,* concurred.

---

[3]The 1959 legislation requires advance publication of a resolution which specifies the minimum royalty, the term of the lease, its form, and one variable, biddable factor on which sealed bids are to be received, and requires that the lease be given to the highest responsible bidder. (Pub. Resources Code, §§ 7058.5 et seq.) These provisions are applicable to cities operating under the general laws with respect to all oil and gas leases and to charter cities with respect to tide and submerged lands granted in trust to them by the state. (Pub. Resources Code, § 7061.)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.