[No. D006351. Fourth Dist., Div. One. Sept. 21, 1988.]

CONCERNED CITIZENS, Plaintiff and Appellant, v.
CITY OF CARLSBAD et al., Defendants and Respondents;
CARLSBAD COMMUNITY BUILDERS ASSOCIATION, Intervener
and Respondent.

938

COUNSEL

Thomas William Smith for Plaintiff and Appellant.

Vincent F. Biondo, Jr., City Attorney, for Defendants and Respondents.

Nossaman, Guthner, Knox & Elliot, Alvin S. Kaufer and Winfield D. Wilson for Intervener and Respondent.

Ronald A. Zumbrun, Edward J. Connor, Jr., James P. Lough, Michael Dean, Michael J. Kargar, City Attorney (Gardena), and John F. Lawson, City Attorney (El Monte), as Amici Curiae on behalf of Defendants and Respondents and Intervener and Respondent.

OPINION

BENKE, J.—

## FACTUAL SUMMARY

On July 15, 1986, Concerned Citizens presented defendant City of Carlsbad with a proposed initiative regulating the rate of development in Carlsbad over the following 10 years. The initiative was supported by the signatures of enough Carlsbad residents to qualify it for decision by the voters in the November 1986 general election. Although the council had the option of enacting the initiative without putting it before the voters (Elec. Code, § 4011), the council placed the measure on the November ballot. Concerned Citizens's proposal was denominated Proposition G.

Proposition G would have limited to 1,000 the number of residential dwelling units that could have been constructed in Carlsbad in calendar year 1987. In 1988 the limit would have been reduced to 750 units; in each year from 1989 through and including 1996 the limit would have been 500 units. Proposition G provided exceptions for replacement dwellings, remodeling, subsidized low-cost housing and senior citizen housing.

In apparent response to Proposition G, the council placed an alternative measure on the ballot. (Elec. Code, § 4017.) The council's measure was denominated Proposition E. Proposition E limited to 33,478 the total number of new dwelling units in the city. Under Proposition E, the rate at which that limit would be reached was governed by the willingness and ability of developers to provide public facilities such as schools, parks, open space, streets and sewers in the areas where they proposed new construction. In

particular, no new units could be constructed unless a builder was willing to finance facilities the city had previously determined would be necessary to support the population density that would result from the new development. In the alternative, a builder could show that the necessary facilities already existed.

Section D of Proposition E stated: "This ordinance is inconsistent with and intended as an alternative to any initiative ordinance which would place an annual numerical limitation on the rate of residential construction. If this ordinance and any such initiative ordinance are both passed by a majority voting thereon then the one with the most votes shall prevail."

On November 4, 1986, Proposition E received 9,652 yes votes and 6,997 no votes. Proposition G received 8,593 yes votes and 8,070 no votes.

Because Proposition E received more affirmative votes than Proposition G, and because the city council found the propositions in conflict, on December 2, 1986, the council enacted Proposition E and refused to enact Proposition G.

## PROCEEDINGS BELOW

On February 23, 1987, Concerned Citizens filed a petition for a writ of mandate in the superior court. The petition asked the superior court to order the council to enact Proposition G. The petition alleged that Proposition G and Proposition E were consistent and that since both were approved by a majority of the voters, Proposition G as well as Proposition E should have been enacted by the council.

The superior court issued an order to show cause and a hearing on Concerned Citizens's petition was held on April 27, 1987. Prior to the hearing the superior court granted Carlsbad Community Builders Association leave to file a complaint in intervention.

After considering the evidence offered by the parties and argument from their respective counsel, the superior court found that the two propositions were inconsistent and entered a judgment denying Concerned Citizens's petition. Concerned Citizens filed a timely notice of appeal.

## ISSUE ON APPEAL

On appeal Concerned Citizens argues that the two propositions are consistent and that the superior court erred in denying its petition. We disagree and affirm.

## Discussion

### Elections Code Section 4016

■ "It is a cardinal rule of statutory construction that statutes relating to the same subject matter must be read together and reconciled whenever possible. [Citations.] This rule applies to initiative measures enacted as statutes as well as to acts of the Legislature. [Citation.] However, in case of an irreconcilable conflict between the provisions of two or more measures approved at the same election, California Constitution, article II, section 10, subdivision (b) provides that 'those of the measure receiving the highest affirmative vote shall prevail.'" (*Estate of Gibson* (1983) 139 Cal.App.3d 733, 736 [189 Cal.Rptr. 201], fn. omitted.)

Like article II, section 10 of the Constitution, Elections Code section 4016 provides that in municipal elections: "If the provisions of two or more ordinances adopted at the same election conflict, the ordinance receiving the highest number of affirmative votes shall control."

Concerned Citizens argues that section 4016 has no application to Propositions E and G because the growth limitations in the two propositions do not necessarily conflict. Concerned Citizens points out that an annual numerical restriction on dwellings, such as the one proposed in Proposition G, could simply supplement a restriction based upon the existence of public facilities, such as the one set forth in Proposition E. In this scenario, if both measures received a simple majority, both would become law. Thereafter a dwelling could be constructed if the builder provided adequate facilities *and* so long as the annual numerical limit had not been exceeded.

However Concerned Citizens's argument is based upon the faulty premise that Proposition E has no substantive effect other than to tie development to the existence of public facilities. By its terms, proposition E goes further: Section D of the measure states that it is inconsistent with an annual numerical limit. Thus as written, the proposition not only creates its own limitations but it expresses an unambiguous intent to supplant any numerical limit. In our view the conflict between the numerical limit in Proposition G and Proposition E could not have been expressed more directly. (See *Estate of Gibson, supra,* 139 Cal.App.3d 733, 736 [proposition repealing inheritance tax as of Jan. 1, 1981, not consistent with proposition repealing tax as of June 8, 1982].)

■ Apparently recognizing the problem section D poses, Concerned Citizens argues that the city council acted improperly in adding section D to its growth limitation plan. However, contrary to Concerned Citizens's

argument, in adopting the language of section D the council was not required to articulate any further conflict between a numerical limit and a public facilities limit. As the court in *Higgins* v. *City of Santa Monica* (1964) 62 Cal.2d 24 [41 Cal.Rptr. 9, 396 P.2d 41] said: "[T]he city's exercise of discretion is not subject to challenge or compelled revision; such exercise 'is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.' [Citations.]

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Acccordingly, *the burden is on the party challenging a statute to show that the legislative choice is 'palpably excluded from any consideration whatever' by the legislative body [citation]; that it is ' "palpably arbitrary and beyond rational doubt erroneous" ' [citation]; that, in short, there is no rational basis whatever for the statute.* No such showing has been made here." (*Id.* at pp. 29-31, fn. omitted, italics added.)

In this case the council's unwillingness to permit passage of both limitations, which it articulated in section D, could have grown out of a concern that dual limitations would unduly hamper residential construction and in turn make affordable housing unavailable to large portions of the local electorate. Such concerns are identical to those embodied in Evidence Code section 669.5, subdivision (a), which states that any numerical limitation is presumed "to have an impact on the supply of residential units available in an area which includes territory outside the jurisdiction of such city, county, or city and county." Like the Legislature, we believe such a concern for the housing market is rational and thus like the plaintiff in *Higgins,* Concerned Citizens cannot demonstrate that section D lacks any rational basis. Given that rational basis, we have no power to require more explanation from the council of the reasons it adopted section D.[1]

■ Concerned Citizens also implies that giving effect to section D somehow infringes upon the right of the people to initiate legislation under article II, section 11 of the California Constitution. By its terms article II, section 11 provides: "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide. . . ." Nothing in this language, or in the cases interpreting it,

---

[1] Were further explanation for the council's decision needed, we note that in enacting Evidence Code section 669.5 the Legislature made the following finding: "The Legislature finds and declares that an adequate supply of housing is necessary for the health, safety, and public welfare of all Californians. The Legislature further finds and declares that local government ordinances which severely restrict the number of housing units which may be constructed have an effect on the supply of housing within the region, may exacerbate the housing market conditions in surrounding jurisdictions, and may limit access to affordable housing within the jurisdiction and in the region." (Stats. 1980, § 1, ch. 1144, p. 3703.)

suggests that local governments and initiative proponents are barred from giving the people alternatives which are mutually exclusive. Rather, the cases suggest that initiative proponents enjoy extensive freedom in drafting and presenting their proposals to voters. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 592 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]: "'. . . The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens. . . ,'" quoting *Dwyer* v. *City Council* (1927) 200 Cal. 505, 516 [253 P. 932]; *Schmitz* v. *Younger* (1978) 21 Cal.3d 90, 92 [145 Cal.Rptr. 517, 577 P.2d 652]: "The right of the initiative is 'precious to the people and is one which the courts are zealous to reserve to the fullest tenable measure of spirit as well as letter,'" quoting *McFadden* v. *Jordan* (1948) 32 Cal.2d 330, 332 [196 P.2d 787].) In our view this freedom includes the power to present proposals which contain provisions such as section D.

Our view of the initiative process is consistent with article II, section 10 of the Constitution and Elections Code section 4016. Both the Constitution and the Elections Code, by providing a procedure for resolving conflicts, plainly contemplate elections where the people are asked to choose between conflicting proposals. Where such conflicts occur provisions such as section D, which give voters notice of a conflict, assist voters in making an intelligent and informed decision.

Our unwillingness to ignore section D is buttressed by the fact that section D was presented to the voters at the November 1986 election. Were we to amend Proposition E by striking section D, as Concerned Citizens seems to suggest, we would disenfranchise all those Carlsbad residents who voted for both propositions on the premise that only one would be enacted. (See *Hass* v. *City Council* (1956) 139 Cal.App.2d 73, 76 [293 P.2d 61].)

Because, like the trial court we have found that on their face the propositions conflict, we need not consider Concerned Citizens's objection to the testimony presented by the city at the hearing below. Nor need we consider the arguments of the intervener and amicus that, even in the absence of a conflict with Proposition E, Proposition G conflicts with state law. In light of the express conflict we have found, the city council had no power to enact Proposition G and the trial court did not err in denying Concerned Citizens's petition.

Judgment affirmed. Respondents City of Carlsbad and Carlsbad Community Builders to recover their costs on appeal.

Wiener, Acting P. J., and Work, J., concurred.