[Civ. No. 29457. Fourth Dist., Div. Two. Dec. 8, 1983.]

MORRIE OSTROW et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE DESERT JUDICIAL DISTRICT
OF RIVERSIDE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

670

COUNSEL

Gary Scherotter for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Grover C. Trask II, District Attorney, and Michael A. Gulla, Jr., Deputy District Attorney, for Real Party in Interest and Respondent.

OPINION

**KAUFMAN, J.**—Following hearing on an alternative writ of prohibition, the superior court denied issuance of a peremptory writ and the petitioners

appeal.[1] At issue is the constitutionality of subdivision (b) of Vehicle Code section 23152. We conclude the statute is not unconstitutional and affirm the judgment.

Appellants are defendants in criminal actions pending in the Municipal Court for the Desert Judicial District, Riverside County, in which each is charged with violations of both subdivisions (a) (driving under the influence of alcohol) and (b) (driving with greater than .10 percent blood alcohol) of Vehicle Code section 23152. Each appellant demurred to the allegation of violation of subdivision (b) on the ground that subdivision (b) was void for vagueness and created a conclusive presumption of guilt. Appellants' demurrers were overruled by the municipal court whereupon appellants petitioned the superior court for a writ of prohibition. An alternative writ issued and an evidentiary hearing was held in which the testimony of two witnesses was received. The petition for writ of prohibition was denied and a statement of decision was filed.

The two witnesses, one called by the prosecution and the other by the appellants, were generally in agreement that the absorption of alcohol into the body and the rate at which it is metabolized by the body are affected by numerous variables, and the court so found. The only significant disagreement between the witnesses was on the question of a person's ability to estimate his or her blood alcohol level in percentages. The defense witness testified he would not be able to form an opinion within reasonable medical certainty as to his blood alcohol level because of the numerous variables. The prosecution witness believed it possible for a person to estimate blood alcohol level by the use of a mathematical formula given certain input factors.

Four contentions are advanced on appeal: (1) Vehicle Code section 23152, subdivision (b) (hereinafter subdivision (b)), is unconstitutional because it establishes a conclusive presumption; (2) the misdemeanor complaints filed against appellants are constitutionally void insofar as they allege a violation of subdivision (b) because they do not provide adequate notice to satisfy due process; (3) subdivision (b) is unconstitutional because it is vague and uncertain; and (4) subdivision (b) is unconstitutional because it is a criminal statute which imposes strict liability. None of these contentions has merit.

---

[1]Effective January 1, 1983, section 904.1 of the Code of Civil Procedure was amended to make a judgment granting or denying a petition for issuance of a writ of mandate or prohibition directed to a municipal court nonappealable unless the appellate court, in its discretion, determines to review the judgment. However, the notice of appeal in the instant case was filed October 29, 1982.

## Conclusive Presumption

█ The quick and simple answer to the contention that subdivision (b) is unconstitutional because it constitutes a conclusive presumption is that it does not constitute a conclusive presumption; it defines and proscribes an offense—it makes it unlawful to drive a motor vehicle with a blood alcohol level of .10 percent or more, by weight, "by weight" being based upon grams of alcohol per 100 milliliters of blood.[2]

## Due Process Notice of the Offense Charged

█ The contention that the criminal complaints filed against appellants do not provide sufficient notice of the offense charged to comply with due process is devoid of merit. In the next section we are called upon to discuss the problem of whether the difficulty in a person's knowing when his or her blood alcohol level equals .10 percent or more so that conduct may be conformed to the statutory standard renders the statute unconstitutional. However, that problem exists with respect to *the statute* because conforming one's conduct necessarily implicates future conduct. No such problem exists with respect to the criminal complaints filed against appellants. They charge that each appellant did on a specified occasion drive a motor vehicle while having a blood alcohol level of .10 percent or more. Each appellant has thus been given notice of the precise offense with which he or she is charged and against which he or she is required to defend.

## Unconstitutional Vagueness and Uncertainty

█ Appellants contend the statutory language ". . . any person who has 0.10 percent or more, by weight, of alcohol in his or her blood" is unconstitutionally vague and uncertain because the language is not commonly understood and gives no fair warning of what conduct is prohibited. Not so.

█ It is true that "[a] [criminal] statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it." (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974], and cases there cited.) █ In terms of the statutory language, however, there is nothing whatever vague or uncertain about subdivision (b) of Vehicle Code section 23152. It specifies with mathematical precision

---

[2]Subdivision (b) of Vehicle Code section 23152 reads in relevant part: "It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. [¶] For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood."

the conduct that is proscribed—driving a motor vehicle while having a blood alcohol content of .10 percent or more by weight. Thus, unlike the situation in the numerous cases cited by appellants, there is here no uncertainty in the language of the statute; appellants' real complaint is that a person is unable to conform his or her conduct to the statutory standard because he or she has no way of knowing whether or not his or her blood alcohol level is .10 percent or more.

We are not at all certain that that problem is properly subsumed under the "void for vagueness" doctrine. The problem derives not from the statutory language but, rather, the nature of the offense, and we strongly suspect that the real legal battleground ought to be and is whether the statute purports to impose strict criminal liability and, if so, whether or not that is constitutionally permissible.

In any event, we reject the contention that subdivision (b) is unconstitutionally vague or uncertain because a member of the public may have difficulty in knowing or determining whether or not his or her blood alcohol level is .10 percent or more.

Similar arguments attacking obscenity statutes have been rejected consistently. ▓▓▓ Lack of precision is not itself offensive to the requirements of due process. The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. (*Roth* v. *United States* (1957) 354 U.S. 476, 491-492 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304].)

Even more to the point, a substantial number of penal statutes require some sort of measurement on the part of the prospective violator. (E.g., Pen. Code, §§ 172 [sale of liquor within specified distances of certain institutions], 374d [animal carcass within 100 feet of street], 597u [requirements in killing a dog or cat by use of carbon monoxide gas], 597x [as above, by use of nitrogen gas]; Health & Saf. Code, § 11056 [controlled substances]; Veh. Code, §§ 21201 [bicycle size and equipment], 21707 [fire areas], 21752 [when driving on left prohibited].) We are aware of none which has been declared constitutionally vague for that reason.

In terms of prescribing a conformable standard, Penal statutes and ordinances prohibiting speeding present essentially the same problem. One is prohibited for example from driving on a state highway in excess of 55

miles per hour, but, without reference to external sources, a driver has no way of knowing whether or not he or she is exceeding the speed limit—whether he or she is going 54 miles per hour or 56 miles per hour.

■ Finally, we observe that in the instant case there was testimony by the expert witness for the prosecution that it is possible for a person to ascertain with reasonable probability whether or not his or her blood alcohol level equals .10 percent or more, and the court found that appellants "produced insufficient evidence to substantiate [their] contention that a person of average intelligence could not ascertain from outside sources at what point during the consumption of alcohol he [or she] would achieve the prohibited [blood alcohol] level." The court also found that appellants "produced insufficient evidence to substantiate a position, that a person could not ascertain from subjective and/or objective symptoms that he [or she] was approaching or at the prohibited level of alcohol ingestion as set forth in the statute." Thus, for purposes of the case at bench the factual predicate necessary to support appellants' contention in the first instance has not been established.

### Strict Criminal Liability

Appellants correctly point out that Penal Code section 20 requires that: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (See also *People* v. *Vogel* (1956) 46 Cal.2d 798, 801-803 [299 P.2d 850].) Appellants then assert that because the average person cannot have knowledge when his or her blood alcohol level passes .09 percent and reaches .10 percent or more, subdivision (b) of Vehicle Code section 23152 in effect imposes strict criminal liability upon the offender and is therefore in violation of Penal Code section 20 and, it is added, unconstitutional. The district attorney elaborates on the distinction between general intent and specific intent crimes and asserts that subdivision (b) defines a general intent crime.

As previously pointed out, appellants failed to establish the factual predicate upon which their contention is based. If as a factual matter a person may with reasonable probability know whether or not his or her blood alcohol level is at or above .10 percent, the statute would not have to be interpreted as imposing strict criminal liability. If appellants had been successful, however, in establishing the necessary factual predicate, we would agree with them that subdivision (b) does indeed impose strict criminal liability. We would not agree with them, however, that that renders the statute invalid.

In the cases cited by appellants themselves (e.g., *People* v. *Calban* (1976) 65 Cal.App.3d 578 [135 Cal.Rptr. 441]), an exception is noted to the re-

quirement of an intent element in every criminal offense: "The only exceptions to [the] general rule are so-called 'public welfare' or '*malum prohibitum*' crimes which are punishable despite the absence of any criminal intent or criminal negligence. . . ." (*Id.,* at p. 584; see also 1 Witkin, Cal. Crimes, §§ 62, 63, pp. 66-67.)

Citing *Calban* (65 Cal.App.3d at p. 585), appellants assert that the offense defined by subdivision (b) cannot constitute a public welfare or malum prohibitum crime because its violation calls for a penalty of from four days to six months in the county jail, a $375 to $500 fine and a six-month license suspension. We do not agree.

■ The offense defined in subdivision (b) of Vehicle Code section 23152 is a public welfare offense. As stated by Witkin: "Certain kinds of regulatory offenses, not common law crimes and classified as 'malum prohibitum' rather than 'malum in se,' are punishable despite the absence of criminal intent in any of the accepted senses. Scholars usually refer to them by such terms as 'public welfare offenses,' or 'civil offenses,' to distinguish them from 'true crimes.' (See Perkins, p. 701; Clark and Marshall, p. 277 et seq.; Hall, p. 327; 12 Stanf. L. Rev. 731.)

"Some idea of the nature of these statutory offenses may be gained from the following descriptions:

"The hazards of industrial injury, congested cities and increased traffic, wide distribution of food and other goods, etc., 'have engendered increasingly numerous and detailed regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare.' (*Morissette* v. *United States* (1952) 342 U.S. 246, 72 S.Ct. 240, 245, 96 L.Ed. 288.)

" 'Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the intent or criminal negligence. . . ." (*Id.,* at p. 584; see also 1 Witkin, Cal. Crimes, §§ 62, 63, pp. 66-67.)

" 'The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and

no more exertion than it might reasonably exact from one who assumed his responsibilities.' (*Morissette* v. *United States, supra,* 72 S.Ct. 246.)

"A leading authority (Sayre) has roughly classified the statutes as follows: '(1) illegal sales of intoxicating liquor, (2) sales of impure or adulterated food or drugs, (3) sales of misbranded articles, (4) violations of antinarcotic acts, (5) criminal nuisances, (6) violations of traffic regulations, (7) violations of motor-vehicle laws, and (8) violations of general police regulations, passed for the safety, health or well-being of the community.' (See *Morissette* v. *United States, supra,* 72 S.Ct. 249, footnote 20; for California illustrations, see *People* v. *McClennegen* (1925) 195 C. 445, 469, 234 P. 91; *People* v. *Schwartz* (1937) 28 C.A.2d Supp. 775, 70 P.2d 1017 [sale of adulterated food]; *In re Casperson* (1945) 69 C.A.2d 441, 159 P.2d 88 [same]; *People* v. *Settles* (1938) 29 C.A.2d Supp. 781, 78 P.2d 274 [lottery]; *People* v. *Balmer* (1961) 196 C.A.2d Supp. 874, 877, 17 C.R. 612.)" (1 Witkin, Cal. Crimes, § 62, pp. 66-67.)

Clearly, the offense defined in subdivision (b) falls within those regulatory offenses not requiring an intent element. Subdivision (b) was enacted because, based on scientific data, the Legislature determined that the driving of a motor vehicle by a person having .10 percent or higher blood alcohol level constitutes a danger to the public. The purpose of the statute is to eliminate the danger, and the danger is the same whether the driver knows or does not know that his or her blood alcohol level is at or above .10 percent.

### Disposition

The judgment is affirmed.

Morris, P. J., and Rickles, J., concurred.